PRESENT:  All the Justices


COMMONWEALTH OF VIRGINIA, ET AL.

v.    Record No. 081691                        OPINION BY
                                    JUSTICE BARBARA MILANO KEENAN
                                           September 18, 2009
JOHN DOE

            FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                        Edward L. Hogshire, Judge

    In this case, we consider whether a court order entered under

Code § 18.2-370.5, granting a convicted violent sex offender

permission to enter public school property under certain specified

conditions, violates Article VIII, Section 7, of the Constitution of

Virginia (the Constitution), which vests in school boards supervisory

authority over public schools.

    In 1999, John Doe was convicted of two charges of taking

indecent liberties with a child while in a custodial or supervisory

relationship, in violation of Code § 18.2-370.1.  Based on Doe's

convictions for these offenses, which are classified by statute as

sexually violent offenses, Doe was required to register as a sex

offender with the Sex Offender and Crimes Against Minors Registry.

See Code § 9.1-902.

    Doe was released from incarceration in 2000 and completed his

term of supervised probation without incident.  After a hearing in

2006 on Doe's petition brought under Code § 9.1-909, the Circuit

Court of Orange County entered an order terminating Doe's duty to re-

register every 90 days as a sex offender, but requiring him to register annually with the Virginia State Police as a convicted sex offender.  That court determined Doe did not "suffer from any mental abnormality or personality disorder that makes him a menace to the health and safety of others or significantly impairs his ability to control his sexual behavior."  See Code § 9.1-909.

At issue in this case is the language of Code § 18.2-370.5, which states:

> A. Every adult who is convicted of a sexually violent offense, as defined in Code § 9.1-902, shall be prohibited from entering and being present, during school hours and during school-related and school-sponsored activities, upon any property he knows or has reason to know is a public or private elementary or secondary school or child day care center property, unless (i) he is a lawfully registered and qualified voter, and is coming upon such property solely for purposes of casting his vote; (ii) he is a student enrolled at the school; or (iii) he has obtained a court order allowing him to enter and be present upon such property, and is in compliance with terms and conditions of the order.  A violation of this section is punishable as a Class 6 felony.
>
> B. Every adult who is prohibited from entering upon school or child day care center property pursuant to subsection A may after notice to the attorney for the Commonwealth and either (i) the proprietor of the child day center, (ii) the superintendent of public instruction of the school division in which the school is located, or (iii) the chief administrator of the school if such school is not a public school, petition the juvenile and domestic relations district court or the circuit court in the county or city where the school or child day center is located for permission to enter such property.  For good cause shown, the court may issue an order permitting the petitioner to enter and be present on such property, subject to whatever restrictions of area, reasons for being present, or time limits the court deems appropriate.

In August 2007, relying on the provisions of Code § 18.2-370.5(B), Doe filed a petition in the Circuit Court for the City of Charlottesville (the circuit court) seeking an order permitting him to enter onto property of the Charlottesville City Schools to attend school events involving his stepson. The circuit court ultimately entered an order granting Doe's petition.

In its order, the circuit court stated that Doe is permitted to come onto the grounds of any Charlottesville public school at which his stepson is a student

> as may be necessary to pick up or drop off his [stepson], to participate in teacher conferences or to meet with faculty or staff, to be a spectator at any school performance at which his [stepson] is a participant, and for any other purpose for which the school administration may specifically consent to or request his presence.

The circuit court also imposed the following conditions on Doe's presence on school property:

> 1. If [Doe] comes onto school property to pick up or drop off his [stepson], he shall not get out of the motor vehicle except to report to the front office or unless asked to do so by the school administration.
>
> 2. If [Doe] wishes to come onto school property for some other reason (teacher-parent conferences, student performances, etc.), he shall only do so under the following conditions: that he notify the principal of the school at least 48 hours in advance of his desire to come onto school property; that the school principal shall have the discretion to refuse permission if there is some particular reason why his presence on school property would be inappropriate or a danger to others, which permission shall not be unreasonably withheld; that he come only for the specific activity, and that he leave school property promptly after the conclusion of the activity; and that he

3

abide by all other terms and conditions of the school administration.

The Commonwealth, the Charlottesville City School Board, and the Superintendent of the Charlottesville City Schools (collectively, the Commonwealth) objected to entry of this order, and we granted the Commonwealth's petition for appeal.

The Commonwealth argues that the circuit court applied Code § 18.2-370.5 in a manner that violates Article VIII, Section 7, of the Constitution (Article VIII), which vests in a school board supervisory authority over the public schools located in a given school division. The Commonwealth asserts that the circuit court's order improperly divests the local school board of its constitutional authority to supervise public schools, which includes the school board making its own determination whether and under what circumstances a sex offender may enter onto school property.

According to the Commonwealth, Code § 18.2-370.5(B) provides circuit courts and juvenile and domestic relations district courts the authority to remove the statutory ban imposed by Code § 18.2-370.5(A), which prohibits a violent sex offender from entering onto school property, and implicitly leaves to a school board the ultimate decision whether to allow the convicted offender entry. The Commonwealth contends that, when interpreted in this manner, Code § 18.2-370.5 does not restrict the supervisory authority granted by the Constitution to local school boards to determine under what, if

4

any, circumstances a previously convicted sex offender may enter onto school property.

In response, Doe argues that the circuit court did not err in issuing an order granting him a limited right to enter onto school property subject to the conditions stated in the order. Doe contends that Code § 18.2-370.5 is unambiguous and represents a clear exercise of the General Assembly's police power. Doe asserts that this police power includes the authority to define crimes, to set sanctions, and to enact laws regarding the conditions that courts may impose upon sex offenders.

Doe contends that the statute does not interfere with a school board's authority under Article VIII, because the Constitution does not give absolute power to the school boards independent of other laws enacted by the General Assembly. In support of this argument, Doe references numerous statutes that either directly or indirectly impose requirements on school boards that affect the operation of public schools. According to Doe, such examples include the statutory requirement that students in public schools recite the Pledge of Allegiance daily, Code § 22.1-202, and the statutory requirement that school boards purchasing insurance for school buildings use an insurance company authorized to do business in the Commonwealth, Code § 22.1-84.

In resolving this issue of statutory construction, we begin with the principle that courts have a duty when construing a statute to

5

avoid any conflict with the Constitution.  Kopalchick v. Catholic Diocese of Richmond, 274 Va. 332, 340, 645 S.E.2d 439, 443 (2007); Jeffress v. Stith, 241 Va. 313, 317, 402 S.E.2d 14, 16 (1991); see Tanner v. City of Virginia Beach, 277 Va. 432, 438-39, 674 S.E.2d 848, 852 (2009); In re Phillips, 265 Va. 81, 85-86, 574 S.E.2d 270, 272 (2003).  We attribute to the General Assembly the intent to enact statutes that comply with the Constitution in every respect. Kopalchick, 274 Va. at 340, 645 S.E.2d at 443.  Therefore, whenever possible, we will interpret statutory language in a manner that avoids a constitutional question.  Marshall v. Northern Virginia Transp. Auth., 275 Va. 419, 428, 657 S.E.2d 71, 75 (2008); Yamaha Motor Corp. v. Quillian, 264 Va. 656, 665, 571 S.E.2d 122, 127 (2002); Eaton v. Davis, 176 Va. 330, 339, 10 S.E.2d 893, 897 (1940).

We also apply the related principle of construction that when a statute can be given two different interpretations, one that is within the legislative power and the other without, we are required to adopt the interpretation that conforms to the Constitution.  Ocean View Improvement Corp. v. Norfolk & W. Ry. Co., 205 Va. 949, 955, 140 S.E.2d 700, 704 (1965); H.L. Carpel of Richmond, Inc. v. City of Richmond, 162 Va. 833, 840, 175 S.E. 316, 318 (1934); see Kopalchick, 274 Va. at 340, 645 S.E.2d at 443; Jeffress, 241 Va. at 317, 402 S.E.2d at 16.  In addition, we must avoid any literal interpretation of a statute that would lead to absurd results.  See Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d

174, 178 (2007); <u>Cummings v. Fulghum</u>, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001).

Applying these principles, we conclude that Code § 18.2-370.5(B) is susceptible of two different constructions. The first construction, which Doe urges, would authorize a circuit court or a juvenile and domestic relations district court (collectively, circuit court) to give a convicted violent sex offender the right to enter onto public or private school property irrespective of a contrary position taken by a school board or private entity. The second construction of Code § 18.2-370.5, advocated by the Commonwealth, would authorize a circuit court to lift the statutory ban imposed by Code § 18.2-370.5(A), but would allow the affected private entity or public school board to determine whether and under what circumstances an offender may enter onto school property.

We conclude that Doe's interpretation of Code § 18.2-370.5(B) raises a constitutional question regarding the power of the General Assembly to restrict the authority granted to school boards by Article VIII. The relevant grant in Article VIII states, in material part, that "[t]he supervision of schools in each school division shall be vested in a school board." Doe's analysis creates a constitutional conflict because his analysis would eliminate the school boards' authority to determine whether the presence of such an offender would adversely affect the safety and welfare of students on school property. Such decisions regarding the safety and welfare of

7

students are manifestly a part of the supervisory authority granted the school boards under Article VIII.

The essential deficiency in Doe's analysis is that it improperly invokes the police power of the legislature to impose the presence of a violent sex offender on public school property. This reliance on the police power is misplaced because the circuit court's order would give Doe, a violent sex offender, the right to enter onto school property for purposes related to the education of his stepson, rather than for purposes related to public safety.

Doe's analysis also overlooks the fact that during the period that a court is supervising a violent sex offender on probation or on a suspended sentence, the court retains the authority to prohibit that offender from entering onto public school property. Moreover, once the offender has completed the terms of his probation or suspended sentence, the court still retains the authority to refuse to lift the ban imposed by Code § 18.2-370.5(A). Therefore, contrary to Doe's analysis, the interpretation of Code § 18.2-370.5(B) advanced by the Commonwealth does not restrict the power of a court to ensure public safety with regard to the presence of a convicted violent sexual offender on school property.

We also observe that Doe's construction of Code § 18.2-370.5(B) would permit absurd results. Under Doe's construction, a circuit court could force an owner of private property who operates a day care center or a private school to admit a convicted violent sex

8

offender onto the owner's property irrespective of the owner's consent. We cannot ascribe to the General Assembly the intent to divest from such owners this basic right of property ownership. Thus, we further disagree with Doe's construction because it permits a circuit court to deny an owner of private property the right to determine who may enter onto that property.

Under the Commonwealth's construction of Code § 18.2-370.5(B), however, the school board would be permitted to exercise its supervisory authority granted by Article VIII. Once a circuit court has lifted the ban imposed by Code § 18.2-370.5(A), the school board would be permitted to determine whether, and under what circumstances, an offender may enter onto school property.

The Commonwealth's construction of the statute also would permit the circuit court to lift the statutory ban in part, specifying the extent to which the ban is lifted regarding the time, place, and reasons for being present on school property. After the circuit court lifts the statutory ban in full or in part, the school board then would be permitted to decide whether to allow the offender entry within all or part of the scope of the lifted ban.

We agree with the Commonwealth's construction of the statute because this interpretation permits the school board to exercise fully its supervisory authority under Article VIII, while preserving the circuit courts' authority to determine whether the statutory ban should be lifted in whole or in part based on the particular

9

circumstances of a given offender. This construction ensures the constitutionality of the statute and preserves the sound legislative purpose of involving both the courts and the affected day care and school authorities in these decisions of manifest public importance.

Finally, our conclusion is not altered by Doe's argument that because the General Assembly has enacted many statutes directly or indirectly affecting the supervisory authority of school boards, Code § 18.2-370.5 is simply another statute that imposes restrictions on the school boards' exercise of its supervisory authority. This argument is unpersuasive because it relies primarily on the passage of various unrelated legislative enactments, rather than on a substantive analysis of the statute at issue. We also find no merit in Doe's remaining arguments.

For these reasons, we will reverse the circuit court's judgment and remand the case for a determination whether, and under what circumstances, the statutory ban of Code § 18.2-370.5 applicable to Doe should be lifted in whole or in part.

<u>Reversed and remanded.</u>

10